1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9  ASARCO, LLC,                          )     No. CV-15-117-PHX-SMM
                                         )
10              Petitioner,              )
                                         )
11  v.                                   )     **MEMORANDUM OF DECISION**
                                         )              **AND ORDER**
12  United Steel, Paper and Forestry, Rubber,)
    Manufacturing, Energy, Allied Industrial )
13  and Service Workers International Union,)
    AFL-CIO, CLC, on behalf of itself and the)
14  other unions representing ASARCO,    )
    LLC'S bargaining unit employees,     )
15                                       )
                Respondents.             )
16  _____)

17         Pending before the Court is Respondents'/Counterclaimants' United Steel, Paper and

18  Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

19  International Union, AFLCIO, CLC ("Union") Renewed Motion to Confirm Arbitration

20  Award. (Doc. 37.) The Union's motion is fully briefed. (Docs. 41-44.) The Court

21  scheduled and the parties presented oral argument on the motion. (Docs. 36, 45, 47.)

22         After review and consideration of the pleadings and the parties' presentations, the

23  Court finds first that ASARCO LLC ("ASARCO") did not waive its argument regarding

24  limitations on the jurisdictional authority of the Arbitrator to reform the collective bargaining

25  agreement. However, on the merits, the Court will confirm the arbitration award, deny

26  vacating the award, and issue judgment.

27                                  **BACKGROUND**

28         The relevant undisputed facts that led to grievances being filed by the Union on

1   behalf of newly hired employees of ASARCO were set forth in the decision of the Arbitrator.

2   (Doc. 2-1.) Using the background facts established by the Arbitrator in his decision (see id.),

3   the Court will state, quote, or summarize the pertinent facts necessary here for the Court to

4   properly resolve the issues presented.

5          ASARCO is engaged in mining and/or refining copper and other minerals at five

6   facilities in Arizona. It also operates a copper refinery in Amarillo, Texas.  The case before

7   the Arbitrator arose out of a decision by ASARCO not to pay what is known as the Copper

8   Price Bonus ("Bonus") to new employees hired on or after July 1, 2011. A grievance

9   protesting ASARCO's decision was filed by the Union on behalf of the new employees not

10  paid the Bonus. The grievance asserted a violation of the June 15, 2011, Memorandum of

11  Understanding between ASARCO and the Union and referenced failure to issue payment of

12  the Bonus to new hires.  The Union requested as a remedy that all new employees hired after

13  July 1, 2011, be made whole on the Bonus.

14         Historically, to put the matter in context, in 2006, negotiations began between

15  ASARCO and the Union for the 2007 Basic Labor Agreement ("BLA"). (Doc. 2-2.) During

16  negotiations, the Union proposed that ASARCO agree to pay a bonus to its unionized

17  employees based on the price of copper. Eventually ASARCO accepted the Union's proposal

18  and the Bonus became Article 9, Section C, of the BLA. (Id. at 46.) Under this section,

19  ASARCO agreed to pay the Bonus based on the three-month average daily cash settlement

20  price each quarter for copper on the London Metal Exchange. ASARCO was to pay the

21  Bonus quarterly in a lump sum to eligible employees; the Bonus would only be paid if the

22  quarterly average copper price exceeded $1.60 per pound. (Id.) If that requirement was met,

23  ASARCO was required to pay the Bonus within 30 days of the end of the quarter according

24  to a scale contained in the BLA. (Id.)

25         During these 2006 negotiations, the parties also agreed to a proposal that limited

26  eligibility to employees who would be entitled to receive the Bonus. Specifically, the

27  eligibility language which became part of the BLA states: "The Copper Price Bonus will be

28  paid to each such Participant accruing Continuous Service under the Retirement Income Plan

for Hourly Rated Employees of ASARCO, Inc. at the end of the calendar quarter." At the arbitration hearing the parties stipulated that the "Retirement Income Plan for Hourly Rated Employees of ASARCO is also known as the "pension plan." In January 2007 a tentative agreement on the BLA was reached which contained the proposed Bonus language. The members of the Union ratified the BLA. Although the Bonus amount has varied depending on the price of copper, the amount paid to each eligible employee has been as high as $8,000 annually.

In 2010, negotiations began for the successor to the 2007 BLA, which was set to expire. The parties agreed to extend the BLA for one year by way of a Memorandum of Agreement ("MOA"). The 2010 MOA was scheduled to expire on June 30, 2011. During the negotiations for a 2011 Agreement, both parties made presentations regarding ASARCO's business outlook. ASARCO displayed a chart showing the cost of the Bonus. It also displayed, under the heading of "Goals and Expectations," the statement "Tie bonus compensation to business performance and achievement of business goals that are defined by key performance indicators or agreed-upon metrics, rather than basing the bonus on the price of copper alone." No specific proposal was made by either party during bargaining to change the Bonus calculation or to change eligibility for the Bonus.

On June 14, 2011, ASARCO proposed modifying Article 12, Section Q of the BLA to state "Employees hired on and after the Effective Date are not eligible to participate in the pension plan." ASARCO also proposed modifying Article 12, Section O, by stating under the heading of Retiree Healthcare: "Employees hired on and after the Effective Date are not eligible for coverage." ASARCO stated that it was its intention to eliminate retiree health care for new hires. ASARCO further proposed a change to Article 12 by adding new language that said: "Article 12, Section P, 401(k) Savings Plan: ASARCO will match 100% of Employee pre-tax contributions up to 6% of eligible pay in cash for Employees hired on and after the Effective date."

At the June 14, 2011 meeting, ASARCO proposed extending the BLA and the 2010 MOA with certain modifications which included ASARCO's proposal that employees hired

on and after July 1, 2011, would not be eligible to participate in the pension plan. The language in the previous MOA, which stated that "All provisions of the BLA shall remain in force and effect, except as otherwise provided herein," also continued in the new MOA. Later, during the negotiations, the Union indicated that it opposed ASARCO's proposal stating that new hires would not be eligible for health care coverage upon retirement. Eventually ASARCO agreed to remove that language.

It is undisputed that at no point during the 2011 collective bargaining negotiations did the Union ask ASARCO if other benefits would be impacted by removing new hires from the pension plan, nor did ASARCO ever state that removing new hires from the pension plan would impact the new hires' eligibility for the Bonus. Rather, neither party mentioned the Bonus or eligibility for the Bonus during collective bargaining. Had the parties been aware of the impact of the change, it is further undisputed that the proposed change in eligibility for the Bonus would have been subject to collective bargaining by the parties. The Union members ratified the new MOA, which was scheduled to go into effect on July 1, 2011.

Between July 1, 2011 and October 25, 2011, ASARCO representatives told prospective new employees and newly hired employees that they would be eligible for the Bonus. ASARCO also made it clear that new hires were not eligible to participate in the pension plan.

Ultimately, before any bonus payments were made to new employees, ASARCO determined that based on the language of the BLA, new employees would not be entitled to the Bonus. The Union then filed a grievance on behalf of the new employees hired on or after July 1, 2011, who were denied the Bonus. The grievance was subject to arbitration.

Before the Arbitrator, the Union argued that there was a mutual mistake shared by both parties which required reformation of the collective bargaining agreement. The Union contended that both parties failed to recognize that the language that eliminated pension benefits for new hires would also make new hires ineligible for the Bonus, and that by failing to change the Bonus eligibility language, the parties failed to ensure that new hires remained eligible for the Bonus. The Union further argued that both parties believed and intended that

all bargaining unit employees would remain eligible for the Bonus.

Before the Arbitrator, ASARCO contended that under the clear language of the MOA the Arbitrator did not have authority to order that new hires be made eligible for the Bonus, nor did he have authority to rewrite the BLA to make new hires eligible for the Bonus. ASARCO relied on the language of the BLA which states that an arbitrator lacks the authority to alter the BLA. ASARCO stressed that the parties specifically agreed in the BLA that an arbitrator, acting under the grievance and arbitration procedure, "shall not have jurisdiction or authority to add to, detract from, or alter in any way, the provisions of [the BLA]." (Doc. 2-2 at 32.) According to ASARCO, based on the Union's request for reformation, the Arbitrator would be required to ignore the BLA, and by doing so, exceed his limited authority and do exactly what the clause prohibits by either deleting the bonus pension link or adding a phrase into the BLA that would entitle new hires to receive the Bonus.  ASARCO argued that the alleged mistake did not authorize the Arbitrator to so exceed his authority and change the language of the BLA.

The Arbitrator stated that the Union could not point to contract language in the BLA that was violated by ASARCO because it simply did not exist. The Arbitrator found that there is no language in the BLA which required that ASARCO pay the Bonus to any employees not covered by the pension plan. Because there is no dispute that employees hired after July 1, 2011 are not covered by the pension plan, the Arbitrator did not find for the Union based on the language of the BLA.  Rather, the Arbitrator applied the doctrine of mutual mistake to reform the BLA to permit the Bonus to be paid to new employees that were not eligible for the Bonus because they did not meet the eligibility requirement of being covered by the pension plan.  The Arbitrator ordered that the BLA be amended to read as follows:

> Article 12, Section Q. Pension Plan: Employees hired on and after the Effective Date are not eligible to participate in the pension plan. However,[ASARCO] shall treat such Employees as if they were accruing Continuous Service under the Retirement Income Plan for Hourly Rated Employees of ASARCO Inc. on the same terms as other Employees, only for purposes of determining eligibility for the Copper Price Bonus pursuant to Article 9, Section C.5 of the BLA. (new language underlined).

1  (Doc. 2-1 at 28.)

2       As to ASARCO's argument that the Arbitrator did not have the authority to rewrite

3  the BLA to make new hires eligible for the bonus the Arbitrator ruled, as follows:

4      [A]rbitrators, including the present one, generally recognize that our authority
does not normally permit us to rewrite a collective bargaining agreement or

5  ignore its provisions. What all this means is that the ultimate issue in this case
is whether the Union met its heavy burden of showing that there was a mutual

6  mistake made by the parties in negotiating and adopting the July 1, 2011
MOA. In situations of that kind, it has been recognized by numerous, but not

7  all, arbitrators and other authorities that in the interest of justice and fairness,
the arbitrator can rewrite a contract to correct what appears to be an obvious

8  mutual mistake.

9  (Id. at 23.)  The Arbitrator remanded the action so that the parties could remedy issues

10  dealing with monetary matters and retained jurisdiction to enforce the award.

11       ASARCO initiated this action to vacate the Arbitrator's award. (Doc. 1.) The parties

12  requested and the Court, through Judge Susan R. Bolton, granted a stay in this matter so that

13  issues with relief could be resolved, so that the arbitration award could become final. (Docs.

14  30, 34.) Subsequently, after issues with relief were resolved, Judge Bolton lifted the stay and

15  the Union moved to enforce the arbitration award.  (Doc. 37.) ASARCO responded and the

16  Union replied in support.  (Docs. 41-44.) The matter was then reassigned to this Court  (Doc.

17  45), and the Court heard oral argument from the parties on the issues (Doc. 47).

18  **STANDARD OF REVIEW**

19       Jurisdiction is conferred upon this Court by Section 301 of the Labor Management

20  Relations Act, as amended ("LMRA"), 29 U.S.C. § 185, and 28 U.S.C. § 1337(a) (action

21  arising under federal law regulating commerce). Under the LMRA, this Court's review of

22  labor arbitration awards is limited.  See Hawaii Teamsters & Allied Workers Union, Local

23  996 v. United Parcel Serv., 241 F.3d 1177, 1180 (9th Cir. 2001). The Court does not consider

24  claims of factual or legal error by an arbitrator as an appellate court would review the

25  decisions of lower courts.  Id.  "The federal policy of settling labor disputes by arbitration

26  would be undermined if courts had the final say on the merits of the awards." United

27  Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 596 (1960).  "When an

28  arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is

1    to bring his informed judgment to bear in order to reach a fair solution of a problem." Id. at

2    597. "Nevertheless, an arbitrator is confined to interpretation and application of the collective

3    bargaining agreement; he does not sit to dispense his own brand of industrial justice." Id.

4    An arbitration award is legitimate "only so long as it draws its essence from the collective

5    bargaining agreement." Id.

6         Arbitration awards are upheld when they represent a "plausible interpretation of the

7    contract." Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, 989 F.2d 1077,

8    1080 (9th Cir. 1993). "A reviewing court is bound–under all except the most limited

9    circumstances–to defer to the decision of [the arbitrator], even if . . . that . . . decision finds

10   the facts and states the law erroneously." Phoenix Newspapers, 989 F.2d at 1080 (quoting

11   Stead Motors v. Automotive Machinists Lodge No. 1173, 886 F.2d 1200, 1204 (9th Cir.

12   1989). The Ninth Circuit has identified three exceptions to the general deference owed to an

13   arbitrator's award: (1) when the award does not "draw its essence from the collective

14   bargaining agreement"; (2) when the arbitrator exceeds the scope of the issues submitted; and

15   (3) when the award runs counter to public policy. Federated Dept. Stores v. United Food &

16   Commercial Workers Union, Local 1442, 901 F.2d 1494, 1496 (9th Cir. 1990).

17        Failing to draw its essence from the collective bargaining agreement is reserved for

18   those cases in which a court determines that the arbitrator's award ignored the plain language

19   of the contract and manifestly disregarded the contours of the bargain expressed by the

20   collective bargaining agreement. See SFIC Properties, Inc. v. Int'l Ass'n of Machinists &

21   Aerospace Workers, Dist. Lodge 94, Local Lodge 311, 103 F.3d 923, 925 (9th Cir. 1996).

22   Awards not drawing their essence from the collective bargaining agreement reflect neither

23   the language of the agreement nor the intent of the parties. Id.

24        An award may also be upheld if it is based on the arbitrator's understanding of

25   industry practices. See Federated, 901 F.2d at 1497. An arbitrator is "not confined to the

26   express terms of the contract" but may also consider the "industrial common law" which "is

27   equally a part of the collective bargaining agreement although not expressed in it." SFIC, 103

28   F.3d at 925.

**DISCUSSION**

The Union asks the Court to grant its motion to confirm the Arbitrator's award (Doc. 37), to deny ASARCO's petition to vacate the Arbitrator's award, and to enter judgment in favor of the Union.

*Jurisdiction*

Initially, the Union argues that ASARCO waived any argument regarding the limits of any jurisdictional authority of the Arbitrator by conceding at the outset of the arbitration hearing and in its post-hearing brief that the arbitrator had authority and jurisdiction to decide the case. (Doc. 37.) According to the Union, to avoid waiving its argument that the arbitrator exceeded the limits of his jurisdictional authority, ASARCO needed to formally object at the arbitration proceeding by either expressly reserving that issue for judicial review or refusing to argue that issue to the Arbitrator and proceeding directly to the merits of the dispute.

In support, the Union relies on the Ninth Circuit cases of George Day Const. Co. v. United Broth. of Carpenters, 722 F.2d 1471 (9th Cir. 1984) and Tristar Pictures, Inc. v. Director's Guild of America, Inc., 160 F.3d 537 (9th Cir. 1998). According to the Union, the George Day court found that merely objecting to an arbitrator's jurisdiction was insufficient to preserve the issue for judicial review: "[W]here, as here, the objection is raised, the arbitrability issue is argued along with the merits, and the case is submitted to the arbitrator for decision, it becomes readily apparent that the parties have consented to allow the arbitrator to decide the entire controversy, including the question of arbitrability." Id. at 1475. In Tristar, the court held that the employer waived its right to challenge the arbitrator's jurisdiction by arguing the issue to the arbitrator. 160 F.3d at 540. Although the employer stated at the arbitration hearing that the arbitrator had no authority to decide certain issues, it chose to argue that the arbitrator lacked authority rather than simply refusing to come to the table. Id. In this manner, the employer "by [its] conduct evinced clearly its intent to allow the arbitrator to decide not only the merits of the dispute but also the question of arbitrability." Id.

The Union also relies on Howard Univ. v. Metropolitan Campus Police Officer's

1   Union, 512 F.3d 716, 720 (D.C. Cir. 2008).  In Howard Univ., the court stated that "[A]bsent

2   excusable ignorance of a predicate fact, a party that does not object to the arbitrator's

3   jurisdiction during arbitration may not later do so in court."  Id.  According to the Union,

4   Howard Univ. involved reformation of a collective bargaining agreement based on a mutual

5   mistake where the employer subsequently claimed in district court proceedings that the

6   arbitrator lacked jurisdiction to decide the issue. (Doc. 23 at 10.) The D.C. Circuit found that

7   the employer had failed to raise that claim during the arbitration proceeding and, as a result,

8   had waived its arbitrability argument based on jurisdiction. (Id.)

9          Finally, the Union argues that ASARCO cannot claim surprise at this juncture.  (Doc.

10   23 at 10.)  The Union contends that it made it clear in its opening statement to the Arbitrator

11   that it claimed mutual mistake and was seeking reformation of the BLA as its request for

12   relief.  (Doc. 24-1 at 32-33.)

13          ASARCO does not contend that the arbitrator did not have jurisdiction to hear the

14   original dispute regarding new employees' eligibility for the Bonus. (Doc. 42 at 3.)  At the

15   arbitration hearing, both parties presented their statement of the issue to the Arbitrator.  The

16   Union presented the grievance as a breach of contract issue, whether ASARCO breached the

17   BLA by failing to pay the Bonus to new employees.  (Id.)  ASARCO presented the grievance

18   as a declaratory judgment action, whether under the terms of the BLA new employees meet

19   the individual entitlement requirements to receive the Bonus.  (Id.)  The Arbitrator followed

20   the Union stating the issue as a breach of contract, whether ASARCO breached the BLA by

21   failing to pay the bonus to new employees.  (Id., (citing Doc. 24-1 at 5.)[1]

22          ASARCO contends that although the parties collectively bargained for a grievance

23   and dispute resolution process that culminated in arbitration, they predetermined the

24   parameters for the resolution of their disputes.  (Doc. 42 at 2.)  The parties included in the

25   BLA a limitation on an arbitrator's authority, such that an arbitrator would "not have

26

27          [1]In the Arbitrator's decision, the Arbitrator subsequently framed the issue as: "Are
     employees hired on or after July 1, 2011 entitled to receive the Copper Price Bonus?" (Doc.
28   2-1 at 10.)

jurisdiction or authority to add to, detract from, or alter in any way the provisions of [the BLA]."  (Id., (quoting Doc. 2-2 at 32).)

ASARCO contends that it repeatedly emphasized on the record that the Arbitrator's jurisdiction and authority was limited by the express terms of the BLA.  ASARCO argues that it preserved its jurisdiction argument in its opening statement:

> Mr. Arbitrator, as you consider the grievance before you and the two key documents as a result of the dispute between the parties and also recognizing, as you well know, that your jurisdiction of authority is that the parties have agreed to confer on you, it is important to bear in mind that you cannot, in resolving this grievance, add to or detract from or alter any provisions of the agreement.

> Now Mr. Smith has suggested that the union is asking for a reformation remedy in this case and he has suggested to you that essentially this language is meaningless, that while it says expressly the arbitrator shall not have jurisdiction or authority to add to, detract from or alter in any way the provisions of this agreement, what he is urging you to do, and he was quite insistent, he was urging on behalf of the union that you do this, is that you rewrite the agreement of the parties. This you cannot do. . . .

> Let me get to our conclusion at this point and I would go back to what we talked about earlier, which is in ruling on the grievance before you, we are subject to the agreements the parties have made. There's no jurisdiction authority here to add to, detract from or alter in any way the provisions of the agreement.

(Doc. 42 at 6 (quoting 43-1 at 4-5 (emphasis added)).)

ASARCO distinguishes the facts in this case from the facts of the cases cited by the Union in support of ASARCO's alleged waiver.  ASARCO argues that the Union's cases concern objections to arbitrability generally rather than a restriction or limitation on the authority of an arbitrator resolving an arbitrable matter.  (See Doc. 42 at 8-9 (citing Tristar, 160 F.3d at 539-40 (whether the arbitrator had jurisdiction when the objecting party asserted that the case should have proceeded under a more specific, non-arbitration provision in the contract, but where the objecting party still moved forward in the arbitration proceeding despite the objection to the general arbitrability of the matter); George Day, 722 F.2d at 1474 (summarizing the arbitrability dispute at the arbitration proceeding as follows: "The employer appeared and contested the arbitrator's authority. The union responded that the grievance was arbitrable [and] . . . . The arbitrator ruled that the issue was arbitrable.");

1    Howard Univ., 512 F.3d at 716 (finding that the employer waived its objection to the
2    arbitrability of the dispute by not mentioning the limit on the arbitrator's jurisdiction until
3    its appearance in the district court).)

4         Based on the objections it raised at the arbitration hearing, ASARCO contends that
5    it did not waive its objection to an Arbitrator's authority to rewrite the BLA. (Doc. 42 at 10.)
6    ASARCO contends that when an arbitrator's jurisdiction is limited by the agreement of the
7    parties, and if the party preserves its objection to the limits of the arbitrator's authority, that
8    issue is properly raised for judicial review, citing George Day, 722 F.2d at 1475.

9         At issue before the Court is whether, pursuant to George Day, ASARCO properly
10   raised its jurisdictional objection to the Arbitrator's authority to rewrite the BLA by
11   expressly stating its objection on the record. The Court finds that ASARCO did not waive
12   its argument regarding the jurisdictional authority of the Arbitrator.  (See Doc. 43-1 at 4-5.)
13   Pursuant to George Day, ASARCO properly raised the issue and thus preserved the issue for
14   judicial review.  It is undisputed that the jurisdictional authority of the Arbitrator at issue was
15   not raised by the parties or the Arbitrator when they all stated the general issue before the
16   Arbitrator at the commencement of the proceeding. (See Doc. 42 at 3.) Neither the Union nor
17   ASARCO received notice that the Arbitrator had reformed the BLA until they received the
18   decision of the Arbitrator, which was subsequent to the arbitration hearing and post-hearing
19   briefing by the parties.  (Doc. 2-1.)  However, the Union argues that ASARCO cannot claim
20   lack of notice, because the Union argued to the Arbitrator that due to the parties' mutual
21   mistake during collective bargaining, it sought for the Arbitrator to reform the BLA to
22   provide relief for the new employees.   (Doc. 24-1 at 32-33.)

23        At issue is whether ASARCO's objection to the Arbitrator's authority to rewrite the
24   BLA on the basis of allegations of mutual mistake, when such relief was raised by the Union
25   at the hearing, was sufficient for judicial review or whether it was insufficient, constituting
26   a waiver. In Van Waters & Rogers, Inc. v. Int'l Bhd. of Teamsters, Local Union 70, 913 F.2d
27   736 (9th Cir. 1990), the court, in evaluating objection language similar to the objection
28   language used by ASARCO at the arbitration hearing, found that Van Waters' objections

1   preserved the jurisdictional question for judicial review.  See id. at 740-41 (finding that Van

2   Waters preserved its objections to arbitrability according to the George Day standard by

3   stating at the outset that the arbitrator only had jurisdiction to decide a limited question and

4   that the arbitrator should make no ruling outside of that jurisdiction). Thus, like the employer

5   in Van Waters, the Court finds that ASARCO'S objection on the record to the Arbitrator's

6   jurisdiction and/or authority to take any action to add to, detract from, or alter in any way the

7   provisions of the BLA, fulfilled the George Day standard.

8          *Merits*

9          Having found that ASARCO did not waive its jurisdictional argument, the Court turns

10  to the merits as to whether the Arbitrator had authority to reform the BLA based on

11  allegations of  mutual mistake occurring between the parties during collective bargaining or

12  whether the Arbitrator lacked authority to rewrite the BLA based on the BLA provision that

13  an arbitrator would "not have jurisdiction or authority to add to, detract from, or alter in any

14  way the provisions of [the BLA]."  (Doc. 2-2 at 32.)

15         ASARCO does not challenge the general authority of the Arbitrator to decide the

16  grievance filed by the Union on behalf of new employees regarding eligibility for the Bonus.

17  (Doc. 42 at 3.) Further, ASARCO does not challenge the arbitration award based on the

18  Arbitrator's findings of fact regarding mutual mistake by the parties during collective

19  bargaining or the Arbitrator's conclusions of law regarding reformation of the BLA. (Doc.

20  1 at 2.) At issue is the scope of the Arbitrator's authority in the context of a "no-add"

21  provision contained in the parties' collective bargaining agreement to alter and/or add to the

22  BLA.

23         ASARCO seeks to vacate the Arbitrator's award contending that the Arbitrator did

24  not have jurisdiction or authority to rewrite the BLA. (Id.) ASARCO argues that the

25  Arbitrator exceeded the express jurisdiction and authority granted to him by the parties and

26  dispensed his own brand of industrial justice by issuing an award that fails to draw its

27  essence from the BLA because it expressly violates the BLA. (Id. at 9.) Citing United Food

28  & Comm'l Workers Union, Local 1119, AFL-CIO v. United Markets, Inc., 784 F.2d 1413,

1415 (9th Cir. 1986), ASARCO contends that if "the arbitrator's interpretation [of the collective bargaining agreement] violates the terms of the agreement, the court cannot enforce the award." (Doc. 1 at 11.) According to ASARCO, the award must be vacated because the Arbitrator added a new five-line term to the BLA, despite the BLA's express language stating that the Arbitrator did not have authority to vary the terms of the agreement. (Id.)

The Union counters ASARCO's argument, stating that the parties cannot correct, and must be bound to, erroneous language that neither side intended during bargaining, is untenable. (Doc. 23 at 17.) According to the Union, the "no-add" provision in the BLA did not bar the Arbitrator from ordering reformation of the BLA upon a finding of mutual mistake because when mutual mistake is proved, the Arbitrator is not adding to, detracting from, or altering the agreement; rather, the Arbitrator is merely confirming the actual agreement entered into by the parties. (Id.) Citing Caliber One Indem. Co. v. Wade Cook Fin. Corp., 491 F.3d 1079, 1083 (9th Cir. 2007), the Union contends that reformation of a finding of mutual mistake does not in any way add to, detract from, or alter the original agreement; it merely ensures that the written document actually reflects the parties' true intent in the agreement. (Doc. 23 at 17.)

Continuing, the Union argues that the "no-add" provision did not strip the Arbitrator of his authority to reform the BLA due to mutual mistake. (Doc. 44 at 10.) The Union cites Am. Fed'n of State, Cnty. v. Miami-Dade Public Schools, 95 So.3d 388, 391-92 (Fla. App. 2012), in which the court held that where a mutual mistake results in a written document which differs from the terms the parties actually agreed upon, an arbitrator who reforms the instrument is merely acting to restore the parties' true intent *even though there is a no modification clause in the collective bargaining agreement* limiting the authority of the arbitrator. (Doc. 44 at 10-11 (emphasis added).)

ASARCO responds that an arbitrator only enjoys wide latitude in fashioning an appropriate remedy in the absence of contractual restriction and that an arbitrator cannot act in direct contravention to a "no-add" provision in the collective bargaining agreement. (Doc.

- 13 -

42 at 14-15.) In support, ASARCO cites <u>Swepco Tube, LLC v. Local 427</u>, No.CV 07-767, 2008 WL 746670 at *5-7 (D. N.J. Mar. 18, 2008). In <u>Swepco</u>, in its discussion of a "no-add" collective bargaining provision, the court stated that the contractual limit on the arbitrator's authority is unaffected by facts showing mutual mistake. <u>Id.</u> at *5-7. Thus, applying that principle here, ASARCO argues that the Arbitrator acted outside the scope of his contractually delegated authority by writing into the contract a provision which did not appear in the BLA even if supported by a mutual mistake made by the parties during collective bargaining.

In reply, the Union contends that accepting ASARCO's argument here would mean that an arbitrator could never apply the doctrine of mutual mistake to reform an agreement containing a boilerplate "no-add" provision. (Doc. 44 at 10.)  The Union argues that if the parties had intended to restrict the Arbitrator's authority to apply ordinary doctrines of contract law such as mutual mistake and reformation, they would have had to so expressly state in the BLA. (<u>Id.</u>) The Union contends that ASARCO cited no such contractual or extrinsic evidence supporting the conclusion that the parties intended to preclude arbitrators from applying basic contract principles to resolution of grievances. (<u>Id.</u>)

Following oral argument, in a supplemental submission, ASARCO argues that in <u>Holly Sugar Corp. v. Distillery Workers Int'l Union</u>, 412 F.2d 899, 905 (9th Cir. 1969), the Ninth Circuit respected the "no-add" provision in the collective bargaining agreement. (Doc. 49.) In <u>Holly Sugar</u>, the Ninth Circuit acknowledged its limited review of an arbitrator's award and its holding did not disturb the factual findings or the conclusions of the arbitrator. <u>Id.</u> at 904.  Alternatively, the court went on to discuss the employer's arguments on the merits in order to justify that judicial intervention was not appropriate regarding the arbitrator's award. <u>Id.</u> at 905. Based on a collective bargaining agreement "new jobs" exception to the "no-add" provision, the arbitrator resolved the grievance by creating a new job classification based upon practice within the industry, even though the new job classification had not occurred as a result of collective bargaining. <u>See</u> <u>United Steelworkers v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 581-82 (1960). The <u>Holly Sugar</u> court did not

1    consider or rule on the issue of whether an arbitrator exceeds his authority when applying
2    ordinary principles of contract law to a grievance in the context of a "no-add" provision, and
3    is therefore inapplicable here.

4        At issue before the Court is the scope of the Arbitrator's authority in applying contract
5    principles in the context of a "no-add" provision that is part of the parties' collective
6    bargaining agreement. A collective bargaining agreement is a contract and is to be interpreted
7    according to ordinary principles of contract law. See M&G Polymers USA, LLC v. Tackett,
8    135 S. Ct. 926, 933 (2015). As with any other contract, the parties' intentions control. Id.
9    Here, the Arbitrator found that a mutual mistake was made by the parties during collective
10    bargaining and that, based on ordinary principles of contract law, the BLA needed to be
11    reformed.  It is undisputed that neither the Arbitrator's findings of fact regarding mutual
12    mistake nor the Arbitrator's conclusion of law regarding reformation are under review. See
13    Enter. Wheel & Car Corp., 363 U.S. at 597 (stating that "[w]hen an arbitrator is
14    commissioned to interpret and apply the collective bargaining agreement, he is to bring his
15    informed judgment to bear in order to reach a fair solution of a problem.") It is undisputed
16    that the Arbitrator did have general jurisdiction to reach a fair solution to the problem. The
17    only issue before the Court is whether the Arbitrator exceeded the scope of his authority
18    regarding his treatment of the "no-add" provision in the collective bargaining agreement.

19        In Miami-Dade Public Schools, the Florida Court of Appeals faced the same issue.
20    The court held that the arbitrator's reformation of the contract was not a modification of the
21    collective bargaining agreement and thus did not violate the "no-add" provision. 95 So.3d
22    at 392. The underlying rationale was that reforming the collective bargaining agreement only
23    corrected the defect in the written document so that it reflected the true terms of the parties'
24    agreement. Id. Therefore, reformation did not violate the "no-add" provision. Id. The Florida
25    Court of Appeals went on to state that a failure to reform the agreement in the undisputed
26    presence of a mutual mistake would have constituted a modification of the agreement
27    because the agreement would not have reflected the true intent of the parties. Id.

28        The Court agrees with the rationale of the Miami-Dade Public Schools court.  Here,

1   the Arbitrator's reformation did not violate the "no-add" provision because it only corrected
2   the defect in the written document so that it reflected the true terms of the parties' agreement.
3   If the Court were to accept ASARCO's argument, it would mean that an arbitrator may never
4   apply the doctrine of mutual mistake to reform a collective bargaining agreement that
5   contains a "no-add" provision. This runs contrary to the Supreme Court's general guidance
6   in M&G Polymers that in a collective bargaining agreement, as with any other contract, the
7   parties' intentions control. 135 S. Ct. at 933.

8           The Court disagrees with ASARCO that the holding in Swepco regarding the effect
9   of a "no-add" provision in a collective bargaining agreement is persuasive for this case. In
10  Swepco, the court first found that the arbitrator had improperly found mutual mistake, that
11  there was only unilateral mistake, that reformation was not an appropriate remedy for a
12  unilateral mistake, and consequently, that the award had to be vacated. 2008 WL 746670 at
13  *4-5. In the context of unilateral mistake, the court then went on to discuss a "no-add"
14  provision in the collective bargaining agreement and found that the arbitrator acted outside
15  of his authority when he re-wrote terms into the collective bargaining agreement that had not
16  been agreed to by the company. Id. at *5-7. Thus, Swepco is not persuasive because it is not
17  a mutual mistake "no-add" case. Furthermore, the Swepco court's discussion of the "no-add"
18  provision is not persuasive based upon the reasons this Court has already stated.

19                                          **CONCLUSION**

20          The Court finds that the "no-add" provision did not close the door on the Arbitrator's
21  authority to fashion relief when the undisputed facts revealed mutual mistake by the parties.
22  The Arbitrator's reformation of the collective bargaining agreement only corrected the defect
23  in the written document so that it reflected the true terms of the parties' agreement. The
24  Arbitrator did not exceed his authority by applying ordinary principles of mutual mistake and
25  reformation in the context of the "no-add" provision of the BLA.

26          Accordingly,

27          **IT IS HEREBY ORDERED** granting the Union's Renewed Motion to Confirm
28  Arbitration Award.  (Doc. 37.)  The Clerk of Court shall enter Judgment for the Union.

**IT IS FURTHER ORDERED** denying ASARCO's Petition to Vacate Arbitration Award. (Doc. 1.) The Clerk of Court shall dismiss ASARCO's Petition to Vacate Arbitration Award with prejudice.

DATED this 2nd day of March, 2016.

Stephen M. McNamee
Senior United States District Judge